## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICE(S) CARRIED BY CORDELL WASHINGTON | CASE NO. 2:22-mj-78<br><br> Filed Under Seal |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Trace S. Way, Special Agent (SA) with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

### EDUCATION, TRAINING, AND EXPERIENCE

1.      I am a Special Agent with HSI assigned to the Office of the Assistant Special Agent in Charge, Columbus, Ohio, and I have been a Special Agent since November 2019. I am currently assigned to the Central Ohio Human Trafficking Task Force investigating matters involving human trafficking, which can involve other matters including prostitution and drug trafficking.  As part of my professional experience, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics in conjunction with human trafficking and prostitution, human trafficking, and narcotics trafficking.  I have participated in the execution of state and federal search and seizure warrants and have seized or assisted in seizing contraband and evidence, including firearms, ammunition, and documentary evidence, which includes electronically stored documents.

2.      Prior to becoming a Special Agent with HSI, I served as a U.S. Border Patrol Agent for approximately two years and a Customs and Border Protection Officer for approximately four years; having begun my federal law enforcement career in August 2013. As a

Special Agent my responsibilities and duties include the investigation and enforcement of federal

laws and regulations related to customs and immigration violations, including but not limited to

narcotics, financial crimes, fraud, human trafficking, and violations of the Immigration and

Nationality Act. While performing my duties as a Special Agent, I have participated in various

investigations involving human trafficking-related and narcotics trafficking-related offenses,

including violations of 21 U.S.C. §§ 841 and 846. I have received criminal investigative training,

including 26 weeks of intensive training at the Federal Law Enforcement Training Center

("FLETC") in Glynco, Georgia. This training included instruction on the methods used by

criminals to violate the laws of the United States (U.S) and evade detection by law enforcement. I

have had formal and on-the-job training in matters involving human trafficking and narcotics

trafficking from instructors, supervisors, and colleagues.

3.      As a Special Agent, I am authorized to investigate violations of the laws of the

United States and to execute warrants issued under the authority of the United States.

## PURPOSE OF THE AFFIDAVIT

4.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic

investigative technique further described in Attachment B, in order to identify the cellular device

or devices carried by Cordell WASHINGTON (the "**Target Cellular Device**"), described in

Attachment A. The facts set forth below are based upon my own personal observations,

investigative reports, and information provided to me by other law enforcement agents.  I have

not included in this affidavit all information known by me relating to the investigation. I have not

withheld any evidence or information which would negate probable cause.  This affidavit is

2

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the **Target Cellular Device(s)** is currently believed to be located inside this district because Cordell WASHINGTON ("**WASHINGTON**"), the owner/user of the **Target Cellular Device(s)**, resides in the Pickerington, Ohio area and has been observed by surveillance spending most of his time in this district. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device(s) is within the district when the warrant is issued.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) have been committed, are being committed, and will be committed by **WASHINGTON**. There is also probable cause to believe that the identity of the **Target Cellular Device(s)** will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the **Target Cellular Device(s)**, its user, and the criminal violations under investigation, law enforcement must first identify the **Target Cellular Device(s)**. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

7.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

3

## **INVESTIGATION AND PROBABLE CAUSE**

8.      The Central Ohio Human Trafficking Task Force (COHTTF) in Grove City, Ohio, HSI Columbus, and the Drug Enforcement Administration (DEA) Columbus have been conducting an ongoing narcotics and human trafficking investigation into a drug trafficking organization (DTO) operating in Columbus, Ohio. Investigators believe this DTO is engaged in a large-scale conspiracy involving human trafficking, fraud, narcotics distribution, and money laundering.  Investigators believe this DTO is bringing in large quantities of fentanyl and cocaine into Columbus from the United States/Mexico border. These drugs are then being used to coerce individuals to engage in sexual activity for profit, in which the DTO benefits from. As part of that investigation, the COHTTF has obtained multiple State of Ohio search warrants on residences and cellular phones being utilized by the DTO to distribute drugs in central Ohio.

9.      Through the ongoing investigation, investigators have identified several individuals associated with this DTO.  The associates are engaged in the day-to-day operations of the DTO.  The listed individuals have been identified as being participants of the illicit activity being conducted by this DTO.

      a.   Patrick SAULTZ aka "White Boy Pat", aka "Pat"

      b.   Cordell WASHINGTON aka "DUB", aka Cory, aka "Bro"

      c.   David PRICE aka "DP", aka "Beast"

      d.   Tyler BOURDO

      e.   Tavaryyuan JOHNSON aka "Gucci" aka "TJ"

      f.   Robert TINSLEY lll aka "Cam"

  g. Anthony FRIERSON aka "Royal"

  h. Mitchell POWERS

  i. Darrell FIELDS

  j. Braylin SORIANA aka "BB"

  k. Angela HUNT aka "Ang"

  l. Danny MULLINS

  m. Melissa HUMPHREY aka "Nini"

  n. Jada GREASON

  o. Alexis LEWIS aka "Lexi"

  p. Brittney WILLIAMS

  q. Individuals yet to be determined

10. In September of 2020, DEA Task Force Officer (TFO) Peter N. Vanderbilt received information from Columbus Division of Police (CPD) Narcotics detectives and patrol officers that Patrick M. **SAULTZ** and Cordell A. **WASHINGTON** are members of a DTO that distributes cocaine, heroin, fentanyl, methamphetamine and marijuana throughout the city of Columbus, Ohio, with the assistance of Tavaryyaun **JOHNSON** and Howard A. GOODMAN.

11. On September 4, 2020, a CPD officer working uniformed patrol in a marked CPD cruiser conducted a traffic stop on **JOHNSON**.  **JOHNSON** was driving a silver, 2005 Chevrolet Equinox, bearing Ohio registration HUC2760.  **JOHNSON** was placed under arrest for Driving Under Suspension.  During a search incident to arrest of his person, the officer recovered $3,156.38 from **JOHNSON'S** left front pocket.  The money was in several small bundles of smaller denominations, consistent with how money is collected by drug traffickers. During an administrative inventory of the vehicle, officers recovered 273.3 grams of suspected heroin and

312.2 grams of suspected crack cocaine, concealed in a panel in the center console. The suspected drugs were packaged in several individual baggies, consistent with drug distribution.

12.     On December 17, 2020, a CPD Narcotics confidential source (CS#1) purchased approximately 0.1 grams of crack cocaine from a male inside 715 S. Burgess Avenue, Columbus, Ohio 43223. CS#1 gave a description of the individual she purchased the crack from as a black male in his mid-30's, wearing a red and black sweat suit. Shortly after CS#1 exited the residence, CPD Narcotics detectives executed a search warrant at 715 S. Burgess Avenue and recovered the following illegal drugs (exact weight): 109.665 grams of crack cocaine, 115.987 grams of powder cocaine, 7.979 grams of fentanyl, 7.071 grams of methamphetamine and 4.5 pounds of marijuana. **WASHINGTON** was located inside, wearing a red and black jump suit. **WASHINGTON** was the only one in the residence who matched the description given by CS#1. $983.00 was recovered from **WASHINGTON'S** right front pants pocket.  Also located inside the residence were the following items:  High Standard .22 caliber handgun loaded with 10 live rounds, Ruger LC9S 9mm handgun loaded with 9 live rounds, 1 set soft body armor, 1 set of rifle plate body armor, and $5,295.00 plus $20.00 of Official Advanced Fund (buy money).

13.     On or about March 14, 2021, a CPD Officer was patrolling a neighborhood in the west side of Columbus, Ohio in a marked cruiser.  During the officer's tour of duty, he spoke with several sources in the area which stated drugs and women are trafficked from this location. The sources went on to tell the officer of a structured criminal enterprise involving several men which are facilitating the ongoing criminal activity. One source, Sarah Burris (who is now since deceased of a drug overdose), stated the men are using an online website called "Megapersonals" to place escort ads for women to engage in solicitation for prostitution.  Burris stated that a black male named Anthony **FREIRSON** aka "Royal" is usually the person who places the ads on

Megapersonals for the women conducting the prostitution acts. Burris advised she believes the person who oversees the operation is David **PRICE**. Burris stated that another individual named Mitchell **POWERS** is also involved but is usually more toward the drug trafficking activity rather than the sex trafficking. Burris ended by saying the person that supplies the illegal drugs to the named individuals is Patrick **SAULTZ** aka "White Boy Pat".

14. On June 3, 2021, at approximately 1:50 p.m., investigators conducted surveillance on 559 S. Burgess Ave., Columbus, Ohio 43204 after learning that **SAULTZ'** girlfriend, Alexis **LEWIS**, had two active felony probation violation warrants. TFO Vanderbilt observed several vehicles parked in front of the residence: a silver 2008 Chevrolet Silverado, bearing Ohio license plate JEG9900, registered to **WASHINGTON**, and a grey 2015 GMC Yukon, bearing Ohio temporary registration M616691, registered to **WASHINGTON**. Between 1:58 p.m., and 5:06 p.m., TFO Vanderbilt observed approximately 16 people enter the residence of 559 S. Burgess Ave. and leave after a brief period of time. Investigators know this type of activity to be consistent with narcotics trafficking. At approximately 5:00 p.m., TFO Vanderbilt observed Melissa **HUMPHREY** approach the front door of the residence, knock, and enter. At this time **HUMPHREY** had an outstanding arrest warrant through Franklin County Municipal Court for Driving under Suspension. At approximately 5:16 p.m., TFO Vanderbilt observed Tyler **BOURDO** approach the front door of the residence, knock, and enter the residence. At approximately 5:27 p.m., TFO Vanderbilt observed **BOURDO**, **HUMPHREY**, and a white male exit the residence and enter a white 2002 Pontiac Sunfire, bearing Ohio registration JIH5909, registered to Tyler **BOURDO**, and depart southbound. **BOURDO** was seen in the driver's seat as the vehicle drove away. At approximately 5:30 p.m., a CPD Officer initiated a traffic stop on **BOURDO's** vehicle on S. Ogden Ave., north of Eakin Rd. **HUMPHREY** was taken into custody

for her outstanding warrant. During a probable cause search of the vehicle due to the discovery of marijuana, the officer discovered what appeared to be handwritten ledgers documenting what investigators believe to be money and unknown drug weight amounts. **BOURDO** was found to have a large amount of cash in his left front pants pocket. At approximately 5:47 p.m., TFO Vanderbilt observed **SAULTZ'** black 2015 Cadillac XTS bearing Ohio registration JEX8525 depart southbound from the driveway of 559 S. Burgess Ave. At approximately 5:49 p.m., TFO Chris Farrington observed **SAULTZ'** Cadillac stop on Eakin Rd, just south of the traffic stop and confirmed **SAULTZ** was the driver and appeared to be the lone occupant of the vehicle. At approximately 5:51 p.m., TFO Farrington observed **SAULTZ** drive northbound on S. Ogden Ave., past the traffic stop and circle the block, stopping again on Eakin Rd., just south of the traffic stop. At approximately 6:00 p.m., TFO Vanderbilt observed **SAULTZ** again drive northbound past the traffic stop, then westbound on W. Mound St. and out of the sight of investigators.

15. On or about May and June of 2021, investigators were able to identify the residence of 776 Chestershire Road, Columbus, Ohio as being linked to this DTO. Surveillance conducted by investigators showed **FRIERSON** and several known women who engage in prostitution frequenting this location. Activity at this location was consistent with drug trafficking.

16. On June 16, 2021, CPD Narcotics Tactical Entry Team (INTAC) requested the Franklin County, Ohio Municipal Court for a search warrant for the residence of 776 Chestershire Road, Columbus, Ohio 43204, based on probable cause of illegal narcotics sales. The warrant was later approved and signed by the court. On June 16, 2021, Columbus Police INTAC executed a search warrant on the residence of 776 Chestershire Road, Columbus, Ohio. From this search warrant, several cellular devices were seized, and several individuals were arrested on warrants, including **FRIERSON** and **HUMPHREY**. On or about June 17, 2021, TFO Brandon Harmon

requested a search warrant from Franklin County, Ohio Municipal Court to search the contents of two cellular devices belonging to **FRIERSON**. On June 17, 2021, the court granted and signed the warrant. TFO Harmon then submitted the cellular devices for a forensic download and extraction. On or about July 13, 2021, TFO Harmon received two completed extraction reports from the said cellular devices. After reviewing the reports, TFO Harmon discovered messages indicative of drug trafficking activity. There were several videos stored in the cellphones where it appeared **FRIERSON** had access to remote Wi-Fi cameras that showed the basement of 776 Chestershire Road. Investigators found that **FRIERSON** had the phone numbers belonging to other associates involved in this case. The context of the messages between **FRIERSON**, **PRICE**, and **SAULTZ** show that **FRIERSON** was deleting content. Investigators believe **FRIERSON** was deleting the content due to the criminal nature of the messages.

17. On or about June 17, 2021, COHTTF Officers Harmon and Bell interviewed Sarah Burris regarding her personal knowledge of the criminal activity being conducted by **PRICE**, **FREIRSON** and **SAULTZ**. TFOs Harmon and Bell met Burris at a public location where she was free to leave at any time. During the interview, Burris seemed very nervous and afraid to speak with investigators. During the interview, Burris stated there is a "huge prostitution ring" but was not very specific or did not provide any further details. Burris stated "people do not understand that it is Human Trafficking that is going on". Burris stated "they make you go out and do stuff if you want a place to sleep and the women are required to go out and bring money back from their prostitution efforts". Burris told investigators that "**DP**" and "**PAT**" are running the "trap houses" in the area. Burris then became very scared and ended the interview. Investigators believe **DP** to be David **PRICE** and **Pat** to be Patrick **SAULTZ**.

18.     On or about June 18, 2021, COHTTF Officers Harmon and Bell conducted an interview of **FRIERSON** at Franklin County Corrections Center II located at 2460 Jackson Pike Columbus, OH 43223.  **FRIERSON** was in the custody of the Franklin County Jail on a warrant for a misdemeanor traffic violation.  **FRIERSON** was read his Miranda Warning which he waived and agreed to speak with investigators. During the interview, investigators only asked **FRIERSON** questions pertaining to their investigation.  **FRIERSON** stated prior to his arrest he was living at 776 Chestershire Road for approximately two months. **FRIERSON** stated they served illegal narcotics at 776 Chestershire Road and his job was to keep everything organized inside the house. **FRIERSON** stated 776 Chestershire Road belonged to a female named "Nikki" and she was becoming increasingly agitated with the amount of control the people in charge of the operation had and they were becoming violent. **FRIERSON** stated that Darrell **FIELDS** was selling drugs inside of 776 Cherstershire Road at one point but then "Nini" (**HUMPHREY**) took over. **FRIERSON** stated he took care of all the women that came over to 776 Chestershire Road, but he did not give them drugs. **FRIERSON** stated the girls made money from prostitution efforts and stealing.  **FRIERSON** stated he was at one point engaged in soliciting himself for prostitution and he went by the name "**Royal**".  **FRIERSON** stated he was provided free drugs by an individual named "**Pat**".  **FRIERSON** stated he did not know "**Pat's**" last name.  **FRIERSON** stated he stored "**Pat's**" phone number in his phone under "bossman".  **FRIERSON** stated that "**Pat**" lives at a house on S. Burgess Avenue and **FRIERSON** goes there to get drugs.

19.     On or about June 19, 2021, COHTTF Officers conducted a trash pull at **PRICE'S** residence located at 139 S. Princeton Avenue Columbus, Ohio.  Investigators believed this was **PRICE'S** primary residence due to electronic and physical surveillance.  Investigators have also seen vehicles that they are familiar with **PRICE** driving parked in the rear and front of 139 S.

10

Princeton Ave. The officers picked up the trash can in the alleyway located in rear of 139 S Princeton Ave, which was also marked with the address. The officers inventoried the trash and separated evidence. The officers secured several small baggies that contained residue believed to be illegal narcotics. At the police facility, TFO Harmon field tested the plastic baggies utilizing a 908 Field Test Device. TFO Harmon ran one sample each from two separate baggies. One of the baggies tested positive for Fentanyl while the other baggie tested positive for Cocaine.

20.     On June 26, 2021, COHTTF Officers conducted a trash pull at the residence of **PRICE**, located at 139 S. Princeton Avenue, Columbus, Ohio. The officers picked up the trash can in the alleyway located in the rear of 139 S. Princeton Ave, which was also marked with the address. The officers inventoried the trash and separated evidence. The officers secured several small baggies that contained residue believed to be illegal narcotics. At the police facility, TFO Harmon field tested the plastic baggies utilizing a 908 Field Test Device. TFO Harmon ran one sample each from two separate baggies. One of the baggies tested positive for a mixture of Cocaine, Hydrocodone and U-47700, while the other baggie tested positive for Cocaine.

21.     On or about June 28, 2021, COHTTF Officers began tracking **PRICE'S** phone. The majority of pings placed **PRICE** in the area of 139 South Princeton Avenue Columbus, Ohio 43223. Investigators have linked the address of 139 S. Princeton Ave as **PRICE'S** residence and owned by **WASHINGTON**.

22.     On or about July 12, 2021, COHTTF Officers conducted an interview of Sarah Burris at Franklin County Corrections II. Burris was in custody at the Franklin County Jail for a misdemeanor soliciting for prostitution warrant. Investigators did not read Ms. Burris her Miranda Warning due to them not asking her questions pertaining to her arrest. Burris stated "**Pat**" (**SAULTZ**) and "**Dub**" (**WASHINGTON**) are at the top of the list for supplying narcotics. Burris

stated "**DP**" (**PRICE**) is directly underneath them. Burris stated sometimes she will go inside "**Pat's**" to get the narcotics. Burris stated when they carry the narcotics they put it in the front of their pants because the "pack" will be too big to put inside of them.  Burris stated the "pack" usually consists of crack-cocaine, fentanyl, Xanax, and crystal meth.  Burris stated she will take the narcotics to "**DP's**", but "**DP**" will also go get his own narcotics from "**Pat**". Burris stated both phone numbers for "**DP**" are 614-735-6837 (work phone) and 614-288-9493 (personal phone). Burris stated the trap phone is provided by "**Pat**" because everything of "**DP's**" is "**Pat's**".  Burris stated "**DP**" has approximately three to four handguns and one rifle inside of 139 S. Princeton Ave. Burris stated she solicits by posting Escort Ad's and walking the block. Burris stated all of the money she makes goes to her and then it is spent on "**DP's**" dope.  Burris stated if she doesn't spend money at "**DP's**" trap she will get her ass beat. Burris stated ultimately the money ends up back with "Pat" since he oversees everything. Burris explained her ads posted on "Megapersonals" were being posted by **FRIERSON**.  Burris stated **FREIRSON** took the photos of her that were used for her escort ad.  Burris stated **FREIRSON** has posted for other women, but stopped because he found out that the cops knew about the online ads. Burris stated "**BOURDO**" (**BOURDO**) is out of jail and is selling weight for "**Pat**".  Burris stated "**MITCH**" (**POWERS**) at one time was selling for "**Pat**" as well.  Burris stated if a female is riding around with "**MITCH**" or "**BOURDO**", they are carrying dope.  Burris stated "**DP**" will take girls to his house, 139 S. Princeton Ave, and pay the girls with drugs to have sexual intercourse with them for long periods of time.  Burris stated "**DP**" will provide the women with crack-cocaine, approximately 1 gram, and he will have them perform sexual favors on him for hours. After the sexual favors are completed, **PRICE** will provide them with Fentanyl.  Burris stated "**DP**" only keeps about a pound of crack-cocaine at his house at a time. Burris stated "**DP**" lives at 139 S. Princeton Ave and there

12

is a low-level drug dealing female named **Angie** (Angela **HUNT**) inside. Burris stated **BOURDO** will have girls ride with him who don't have warrants and force the girls to carry "packs" of narcotics from "**Pat's**" house.

23.    On August 3, 2021, HSI TFO Harmon requested the Franklin County, Ohio Municipal Court for a residential search warrant for the address of 139 South Princeton Avenue Columbus, Ohio.  Investigators believed they had probable cause of crimes of illegal drug sales and kidnapping being conducted at this location.  On August 3, 2021, a Franklin County Judge approved and signed a search warrant for the residence of 139 S. Princeton Ave.

24.    On August 4, 2021, the Columbus Police SWAT team executed a search warrant at 139 S. Princeton Ave.  Inside the location during the execution of the warrant were five individuals to include **PRICE** and **HUNT**.  Inside the residence, investigators located several pieces of mail scattered throughout the residence that belonged to **PRICE**. Investigators also found scattered throughout the residence birth certificates, family pictures and other official documents belonging to **PRICE**.  Investigators also found a net total weight of 80.62 grams of cocaine, 27.9 grams of fentanyl, 3 milligrams of Xanex, 3 handguns, and $9,701.00 in U.S Currency.  The drugs were tested at the Columbus Police Crime Lab with positive results.

25.    Throughout this investigation, several victims/witnesses identified phone number (614) 735-6837 as being owned by either **PRICE** or **SAULTZ**.  The victims/witnesses stated that **PRICE/SAULTZ** did not possess this phone but the person running the "trap house" would have possession of it. Victim/witness statements stated this phone would change multiple hands, but this was the phone customers would call if you wanted to purchase illegal drugs.  The person in control of the phone would then direct the customer to the best location to purchase the illegal drugs. During the execution of the search warrant at 139 S. Princeton Ave., investigators located a piece

of notebook paper with the phone number (614) 735-6837 in large black writing. The notebook paper was lying on the dining room table for anyone to see.

26.     As this investigation progressed, investigators were able to identify the residence of 90 North Warren Avenue, Columbus, Ohio 43204 as a location associated to this DTO. Through surveillance methods and source information, investigators established this location to be a residence where drugs were being sold from.

27.     On or about the week of September 5, 2021, investigators conducted a controlled drug purchase with a confidential informant (CI #899) from 90 North Warren Avenue, Columbus, Ohio. The CI #899 was given one hundred sixty dollars ($160) in marked U.S Currency and directed to purchase illegal narcotics from said location. CI #899 was searched before and after the controlled purchase. The controlled buy was monitored by electronic and physical surveillance. The CI purchased approximately 2.8 grams (including package weight) of illegal narcotics. The CI stated he/she purchased the illegal drugs from **BOURDO** and **HUNT.** The suspected narcotics were later field tested by TFO Harmon using a 908 Drug Hunter Device. The drugs tested positive for a fentanyl and cocaine mixture.

28.     On or about September 16, 2021, HSI TFO Harmon requested the Franklin County, Ohio Municipal Court for a residential search warrant for 90 North Warren Avenue Columbus, Ohio. Investigators believed they had probable cause that drug trafficking was occurring from this residence. On September 16, 2021, a Franklin County Municipal Judge approved and signed the mentioned warrant.

29.     On or about September 17, 2021, COHTTF Officers, along with CPD INTAC, executed a search warrant at 90 North Warren Avenue, Columbus, Ohio 43204. Upon the execution of the search warrant, 16 individuals were located inside, to include Braylin **SORIANO** and

14

**FIELDS**. **SORIANO** and **FIELDS** are suspected drug dealers for this DTO and associates of **SAULTZ**. From the search warrant, investigators recovered a net weight of 7.8 grams of cocaine and 11.1 grams of fentanyl, two firearms, and $3,000.00 in U.S Currency. The drugs and one of the handguns were found in a room next to the kitchen where it appeared the drugs were being distributed from. The other handgun was found in a dresser drawer in another room.

30.     On or about September 21, 2021, a CPD Officer met with two cooperative sources (herein, identified as CS# 2 and CS#3). CS #2 and #3 stated their residence of five years is currently being controlled by narcotic traffickers operating at their residence. CS#2 stated that "**Cam**" (Robert **TINSLEY III**), "**Ang**" (**HUNT**), **FIELDS**, and **BOURDO** are in charge of the day-to-day narcotics trafficking at their residence. CS#2 stated that **BOURDO** supplies the house with narcotics, and **BOURDO** is also in charge of picking up the money from the lower-level dealers. CS#2 stated that the narcotics are supplied by **SAULTZ** and **PRICE**. CS#2 stated that he/she has direct knowledge that **FIELDS** has traveled to Southern, Ohio to act as a "tester" for narcotics transactions overseen by **SAULTZ**. **FIELDS** traveled to the location with a money courier and was in charge of testing the narcotics to ensure the purity. CS# 2 stated that **FIELDS** would often return with the packaging from the narcotics which he/she believed to be kilogram wrappers. CS#2 stated several drug users would scrape the residue from the wrappers to get intoxicated. CS#2 stated he/she personally went to **SAULTZ'** residence on S. Burgess Ave., directly across from a school. CS#2 stated he/she has seen **TINSLEY III** with several guns. CS#2 stated he/she saw **TINSLEY III** and **BOURDO** physically assault an unknown white male named "Chuck" with a "slap jack". This assault allegedly occurred due to "Chuck" being $800 short when "running the scales".

31.     On or about October 10, 2021, CPD Officers were patrolling when they encountered an individual (herein, identified as CS#4) who had information on a group of individuals located on the west side of Columbus, Ohio that are selling large amounts of illegal drugs. CS#4 stated that **SAULTZ** lives at 559 S. Burgess Avenue and is selling assorted drugs to include Xanax bars, powder cocaine, and crack cocaine.  CS#4 stated that **SAULTZ** has other people selling drugs for him to include **PRICE**.  CS#4 stated that **WASHINGTON** and **SAULTZ** get the bulk drugs from a Hispanics that lives in the "Short North" area of Columbus, Ohio.  CS#4 stated that **SAULTZ** has used U-HAULS to transport the drugs.  CS#4 stated that once the drugs are inside 559 S. Burgess Avenue, **SAULTZ** will cut and cook the product inside.  CS#4 stated he/she used to buy drugs at a residence located at 776 Chestershire Road and bought from an individual named "Niki", who is associated with **SAULTZ**.

32.     Throughout this investigation, investigators identified the residence of 438 South Harris Avenue, Columbus, Ohio as a location where illegal drugs are being sold from.  This location is linked to this DTO, and the property is owned by **WASHINGTON**.  Cooperative sources and other sources of intelligence have shown that Danny **MULLINS** is selling the drugs for **WASHINGTON**.

33.     On or about the week of November 21, 2021, Columbus Police Investigators conducted a controlled narcotics buy utilizing a CI (herein, identified as CI #1781). CI #1781 was given $20 U.S. currency to purchase $20 U.S. currency worth of crack cocaine from an individual or individuals inside 438 S. Harris Ave.  CI #1781 was searched prior to conducting the controlled buy for any illegal narcotics in his/her possession. Surveillance was conducted of the location during the controlled buy. CI #1781 purchased the suspected drugs and turned them over to investigators.  CI #1781 stated he/she purchased the drugs from an older white male in his 50's.

16

The individual CI #1781 purchased the drugs from has not been identified. The suspected drugs were submitted to the Columbus Police Property Room as evidence pending laboratory analysis for drug identification.

34.    On or about the week of November 21, 2021, COHTTF Officers conducted a controlled narcotics buy utilizing a CI (herein, identified as CI #909). CI #909 was given $160 U.S. currency of confidential funds to purchase one gram of fentanyl from **PRICE**. CI #909 was searched prior to conducting the controlled buy for any illegal narcotics in his/her possession. CI #909 was wired with a recorded listening device and was directed by **PRICE** to go to the residence of 451 South Richardson Avenue Columbus, Ohio 43204. Once there, CI #909 met with **PRICE** and purchased the suspected drugs. After a few minutes of conversation, CI #909 left the residence and met up with investigators where they took custody of the suspected drugs. The suspected drugs were submitted to the Columbus Police Crime Laboratory for analysis and tested positive for fentanyl.

35.    On or about the week of November 28, 2021, COHTTF Officers conducted a controlled narcotics buy utilizing a CI (herein, identified as CI #909). CI #909 was given $410 U.S. currency of confidential funds to purchase two grams of crack cocaine and two grams of fentanyl from **BOURDO**. CI #909 was searched prior to conducting the controlled buy for any illegal narcotics in his/her possession. CI #909 was wired with a recorded listening device and was directed by **BOURDO** to go to the residence of 430 1/2 South Warren Avenue Columbus, Ohio 43204. Once there, CI #909 met with **BOURDO** and purchased the suspected drugs. After a few minutes of conversation, CI #909 left the residence and met up with investigators where they took custody of the suspected drugs. The suspected drugs were submitted to the Columbus Police Crime Laboratory for analysis and tested positive for cocaine and fentanyl.

36. Additionally, while CI #909 was conducting the controlled buy, investigators were able to monitor the live wire being worn by CI #909. Investigators overheard **BOURDO** speaking of an individual he referred to as "Pat" (believed to be Patrick Scheiderer) that is incarcerated at Tri-County Corrections Facility. **BOURDO** went on to state that "Pat" was arrested for possessing a weapon while under disability and "Pat" was trying to accuse **BOURDO** of selling "Pat" the firearm that "Pat" was charged with possessing. **BOURDO** stated he sold the gun to "Pat" for $400 but law enforcement will not be able to prove it. Also, **BOURDO** stated he was supplying illegal narcotics to "Pat" at an unknown location in Marysville, Ohio.

37. On or about the week of December 5, 2021, DEA TFO Vanderbilt received a handwritten letter from an inmate being housed at the Franklin County Jail, Ohio. In the letter, the inmate (herein, identified as CS#5) stated he/she had information on a group of individuals that are selling drugs and "tricking" women on the west side of Columbus. In this letter, CS #5 lists **SAULTZ** aka "White Boy Pat", **WASHINGTON** aka "Dubb", **JOHNSON** aka "Gucci", **BOURDO** and Gabriel **SMITH** as part of this group that are facilitating the drug and prostitution efforts.

38. Due to the information in this letter, HSI TFO Harmon and DEA TFO Vanderbilt went to the Franklin County Jail to conduct a formal interview of CS#5. CS#5 stated **SAULTZ** runs a large-scale drug organization that is supplying local drug dealers in Columbus, Ohio. CS#5 stated the drugs being put out on the street by **SAULTZ** and his organization are fueling street-level prostitution efforts and women to be trafficked for commercial sex purposes. CS#5 stated he/she is also aware of drug overdoses that are causing death, linked to this group. CS#5 stated **SAULTZ**, **WASHINGTON** and **BOURDO** are being supplied major drug offender amounts of illegal narcotics by male Hispanics believed to be connected to the Mexican Cartels and the

18

southern border of the United States. CS#5 stated he/she has knowledge that the drugs from **SAULTZ** have also been used to supply drug houses in Morgantown, West Virginia.

39.    Through open-source material, investigators found a business named Ohio P&C Properties, LLC (Ohio P&C). The incorporator for Ohio P&C is **WASHINGTON** and the agent for Ohio P&C is **SAULTZ**. 559 S. Burgess Avenue has been identified as **SAULTZ'** primary residence, and is owned by Ohio P&C.

40.    Through surveillance in December of 2021, individuals including **WASHINGTON**, **BOURDO**, Jada **GREASON**, and Brittney **WILLIAMS** have been observed arriving at and departing from 559 S. Burgess Avenue in vehicles and have been observed entering and exiting the residence at 559 S. Burgess Avenue. Investigators have identified **GREASON** as **WASHINGTON's** significant other and potentially the mother of **WASHINGTON's** child. Investigators have found **GREASON** to have many suspicious financial transactions, including multiple cash deposits of hundreds of dollars on the same day. **WILLIAMS** frequently visits 559 S. Burgess Ave. **WILLIAMS** has often been seen arriving alone at the residence and then departing with other individuals including **WASHINGTON**, and later been seen dropping off the individuals at 559 S. Burgess Ave.

41.    On January 14, 2022, Alexis **LEWIS** was observed arriving at 559 S. Burgess Ave. in a black Buick Encore. Investigators believe **LEWIS** is **SAULTZ'** girlfriend. At the time, **LEWIS** had an active warrant for a probation violation for Possession of Drugs. At approximately 1:14pm, **LEWIS** was observed leaving 559 S. Burgess Ave. in the black Buick Encore and driving southbound on S. Burgess Ave. At approximately 1:30pm, the Buick Encore was stopped by CPD Officer Spencer Badger per the request of a CPD Detective. During the traffic stop, the CPD Officer found Ashley Morrison to be driving the vehicle and **LEWIS** to be

the passenger. The CPD Officer found **LEWIS** had an active warrant for her arrest and arrested **LEWIS**. During a search incident to arrest, the CPD Officer found drug paraphernalia on **LEWIS'** person. **LEWIS** was taken to Franklin County Correction Center II and booked pursuant to her warrant and arrest.

42.     On January 14, 2022, HSI TFOs Harmon and Dennis interviewed **LEWIS** at the Franklin County Correction Center II. During the interview, **LEWIS** stated she has a boyfriend who is incarcerated at CBCF (the Franklin County Community Based Correctional Facility). **LEWIS** stated her boyfriend is a "pot dealer". Investigators believe it is important to note at the time of this interview, **SAULTZ** was incarcerated at CBCF for violating conditions of his parole.

43.     Since being booked into Franklin County Correction Center II, **LEWIS** has made several calls to **WASHINGTON's** phone number (614) 962-2050. During one of these calls, **WASHINGTON** tells **LEWIS** that **"Pat"** told her "not to share her commissary" with people. **LEWIS** replies she knows what this means and that she will not share. From experience, investigators believe "not to share her commissary" refers to **LEWIS** not sharing information with anyone. In a call with a female believed to be Ashley Morrison, Morrison says **"Pat"** said not to share anything with anybody. Morrison goes on to say that she thinks **"Pat"** is worried that "they" might try to put a "snake up in there" with **LEWIS** to get **LEWIS** to start "jabbin". From experience, investigators believe "they" refers to law enforcement, "snake" refers to an undercover agent or something similar, and "jabbin" refers to sharing secrets or information. On another call, **LEWIS** talks to **WASHINGTON** and **BOURDO**, and **BOURDO** asks her why she did not run. On another call, **LEWIS**, **WASHINGTON**, and **SAULTZ** do a three-way call. During this call, **LEWIS** tells **SAULTZ** she wants to talk to him more. **SAULTZ** replies they cannot keep **WASHINTON's** phones tied up. **LEWIS** says **WASHINGTON** has three phones.

20

44.     During these jail calls, **LEWIS** is often referred to as **"Lexi"**, **SAULTZ** is referred to as **"Bro"** or **"Pat"**, and **WASHINGTON** is referred to as **"Bro"** or **"Dub"**. The context of many of these jail call conversations suggest **LEWIS** and **SAULTZ** are in a relationship. Many of the calls consist of **LEWIS** either talking about missing **SAULTZ**, talking about not being able to see **SAULTZ**, or attempting to coordinate speaking with **SAULTZ**.

45.     On January 17, 2022, LEWIS was scanned through a body scanner at Franklin County Corrections Center II. This scan was performed after **LEWIS** had a suspected drug overdose. Franklin County Sheriff's Office Deputies found **LEWIS** to have contraband on her person. A strip search of **LEWIS** was then conducted. A clear plastic bag containing a pink or red powder was found in **LEWIS'** underwear. **LEWIS** was asked what was in the bag and stated "it's fentanyl mixed with some of my blood". Investigators believe that it is important to note the last place **LEWIS** was observed before the traffic stop and subsequent arrest on January 14, 2022, was 559 S. Burgess Ave.

46.     On the week of January 16, 2022, HSI SA Way, HSI TFO Harmon, HSI Criminal Analyst Hall, DEA TFO Vanderbilt, and Assistant U.S. Attorney Prichard met with CS #5. Information provided by CS #5 included **SAULTZ'** "girl" is "**Lexi**", that "**Lexi**" lived at 559 S. Burgess Ave. with **SAULTZ** at some point, and that "**Lexi**" has served drugs to individuals in the past at 559 S. Burgess Ave. CS #5 also stated **SAULTZ** and **WASHINGTON** frequently change their phones.

47.     Through jail calls between **SAULTZ** and **WASHINGTON**, while **SAULTZ** was incarcerated at CBCF, investigators have learned **WASHINGTON** believes he is being followed. During these calls between **WASHINGTON** and **SAULTZ**, **WASHINGTON** says things are not normal and talks about a vehicle watching **WASHINGTON's** vehicle. On a

21

January 14, 2022, call between **WASHINGTON** and **SAULTZ**, **WASHINGTON** says he does not feel comfortable being over at the spot anymore. Investigators believe "the spot" refers to the residence of 559 S. Burgess Ave. **SAULTZ** responds and says, "need a motherfuckin' plan". Investigators believe this means **SAULTZ** and **WASHINGTON** believe they are being watched by law enforcement and need to change their operation or methods. **SAULTZ** then goes on to say he needs another phone and cellular plan when he gets out of jail. Other calls between **WASHINGTON** and **SAULTZ** indicate they believe vehicles related to their illegal activity are being tracked. Specifically, **SAULTZ** tells **WASHINGTON** to get the tire pressure checked on vehicles and to have the spare tires looked at.

48.     Throughout the course of this investigation, numerous cellular telephone numbers have been previously identified for **WASHINGTON** and other members of this DTO. Pen registers on these various phone numbers confirmed they were being carried by **WASHINGTON** and other members of this DTO, and linked them to communications with each other and various other members of this DTO. **WASHINGTON** is known to be in possession of multiple cellular phones at one time and, from information learned through jail calls, believed to change his phones when he believes law enforcement is investigating him. Based on your affiant's training and experience, drug traffickers typically are in possession of more than one cellular phone and change these phones on a regular basis for the purpose of evading law enforcement.

49.     Based on your affiant's training and experience, narcotics traffickers tend to utilize cellular phones to communicate with narcotics customers, as well as sources of supply and others providing support in their narcotics distribution operation. Due to the constant changing of cellular phone numbers and the use/possession of multiple cellular phones at the same time,

investigators have been unable to identify the current phone(s) and phone number(s) being

utilized by **WASHINGTON**. Based on this information, there is probable cause to believe that the

information sought in this application for up to thirty days will assist in identifying the phone(s)

and phone number(s) currently in possession of **WASHINGTON**, the **Target Cellular**

**Device(s)**.

50.     The electronic investigative technique described below and in Attachment B will

first be utilized at the residence of **WASHINGTON** located at 150 Balderson Dr., Pickerington,

OH 43147 and then at any other locations **WASHINGTON** is observed travelling to during the

course of surveillance or multiple surveillances of him by investigators. **WASHINGTON** does

not have any typical pattern of travel and/or behavior to narrow down the area of use for the

electronic investigative technique described below and in Attachment B.

## MANNER OF EXECUTION

51.     In my training and experience, I have learned that cellular phones and other

cellular devices communicate wirelessly across a network of cellular infrastructure, including

towers that route and connect individual communications. When sending or receiving a

communication, a cellular device broadcasts certain signals to the cellular tower that is routing its

communication. These signals include a cellular device's unique identifiers.

52.     To facilitate execution of this warrant, law enforcement may use an investigative

device that sends signals to nearby cellular devices, including the **Target Cellular Device(s)**, and

in reply, the nearby cellular devices will broadcast signals that include their unique identifiers.

The investigative device may function in some respects like a cellular tower, except that it will

not be connected to the cellular network and cannot be used by a cell to communicate with

others. Law enforcement will use this investigative device when they have reason to believe that

**WASHINGTON** is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the **Target Cellular Device(s)** when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the **Target Cellular Device(s)**, as only the **Target Cellular Device(s)'s** unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the **Target Cellular Device(s)**, they will cease using the investigative technique. Because there is probable cause to determine the identity of the **Target Cellular Device(s)**, there is probable cause to use the investigative technique described by the warrant to determine the identity of the **Target Cellular Device(s)**.

53. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference of cellular devices. Once law enforcement has identified the **Target Cellular Device(s)**, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the **Target Cellular Device(s)** from all other devices.

## AUTHORIZATION REQUEST

54. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

55. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because

there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the person carrying the **Target Cellular Device(s)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

56.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the **Target Cellular Device(s)** outside of daytime hours.

57.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

58.     A search warrant may not be legally necessary to compel the investigative technique described herein.  Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

TRACE S W...
Digitally signed by TRACE S WAY
Date: 2022.02.08 16:44:47 -05'00'

Trace Way
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this ___9th___ day of ___February___, 2022



Elizabeth A. Preston Deavers
United States Magistrate Judge

26